IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 17-cv-01238-RBJ

TEDDY HATZENBUHLER,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

# ORDER

This matter is before the Court on review of the Social Security Administration ("SSA") Commissioner's decision denying claimant Teddy Hatzenbuhler's application for Disability Insurance Benefits under Title II of the Social Security Act. Jurisdiction is proper under 42 U.S.C. § 405(g). For the reasons explained below, the Court AFFIRMS the Commissioner's decision.

## STANDARD OF REVIEW

This appeal is based upon the administrative record and the parties' briefs. In reviewing a final decision by the Commissioner, the District Court examines the record and determines whether it contains substantial evidence to support the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). A decision is not based on substantial evidence if it is "overwhelmed by other evidence in the record." *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561

F.3d 1048, 1052 (10th Cir. 2009). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In addition, reversal may be appropriate if the Commissioner applies an incorrect legal standard or fails to demonstrate that the correct legal standards have been followed. *Winfrey*, 92 F.3d at 1019.

## BACKGROUND

Mr. Hatzenbuhler is 66 years old and lives in Monument, Colorado. *See* R. 1, 167. He served as a combat engineer in the United States Army during the Vietnam War from October 1968 until he was honorably discharged in July 1971. R. 193, 286, 334. While in Vietnam, Mr. Hatzenbuhler experienced traumatic events that led to a diagnosis of post-traumatic stress disorder ("PTSD"). R. 201, 283, 287. After the war, Mr. Hatzenbuhler went on to complete two years of college and earned a technical degree. R. 53, 219. His post-college work history includes software and hardware quality assurance work, employment as a software specialist, and employment as a software engineer. R. 51–58, 91. Mr. Hatzenbuhler was terminated from his most recent job on November 30, 2010, the alleged onset date of his disability. R. 65–66. He asserts that he suffers from the following impairments: degenerative disc disease, obesity, anxiety, depression, hypertension, sleep apnea, left ventricular hypertrophy, headaches, hearing loss, plantar fasciitis, gastro esophageal reflux disease, insomnia, Hepatitis C, and diverticulitis. R. 98–102.

Despite these impairments, Mr. Hatzenbuhler lives alone and is able to handle most household chores and yard work on his own, although he pays a housekeeper to periodically help around the house. R. 26. He has several friends with whom he spends time, and he leaves his house most days. *Id.* In addition, Mr. Hatzenbuhler lifts weights five times per week and is an

avid motorcycle rider—for example, in November 2015 Mr. Hatzenbuhler and his friend rode their motorcycles to Cabo San Lucas, Mexico, a trip totaling over 5,000 miles.  R. 31.

   A. **Procedural History.**

On March 17, 2014 Mr. Hatzenbuhler applied for disability insurance benefits, alleging disability beginning on November 30, 2010.  R. 167.  His claim was initially denied on May 28, 2014.  R. 107.  Mr. Haztenbuhler then requested a hearing, which was held before Administrative Law Judge ("ALJ") Matthew C. Kawalek on December 16, 2015.  R. 44, 116–17.  The ALJ issued a decision denying benefits on January 25, 2016.  R. 19–38.  The Appeals Council denied Mr. Hatzenbuhler's request for review on March 27, 2017, rendering the ALJ's determination the final decision of the Commissioner for purposes of judicial review.  R. 1–7.  Mr. Hatzenbuhler then filed a timely appeal in this Court.

   B. **The ALJ's Decision.**

The ALJ issued an unfavorable decision after evaluating the evidence according to the Social Security Administration's standard five-step process.  First, he found that Mr. Hatzenbuhler had not engaged in substantial gainful activity since his alleged onset date of November 30, 2010 through the date he was last insured, December 31, 2015.  R. 24.  At step two, the ALJ found that Mr. Hatzenbuhler had the severe impairments of degenerative disc disease, obesity, anxiety, and depression.  R. 24–25.  At step three, the ALJ concluded that Mr. Hatzenbuhler did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 25–27.

The ALJ then found that Mr. Hatzenbuhler retained the Residual Functional Capacity ("RFC") to perform medium work, meaning he can stand or walk for six hours out of an eight-

hour workday, and sit for six hours out of an eight-hour workday; he can lift and carry fifty pounds occasionally, and twenty-five pounds frequently; he can frequently climb, stoop, crouch, and crawl; he can understand, remember, and carry out detailed but not complex tasks and instructions; and he should have no more than occasional interaction with the general public. R. 27–35.

At step four, the ALJ concluded that Mr. Hatzenbuhler is unable to perform any past relevant work. R. 35–36. However, at step five the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Hatzenbuhler can perform. R. 37. In particular, the ALJ determined via a vocational expert that Mr. Hatzenbuhler would be able to perform the job requirements of a meat clerk, a plant care worker, or a landscape specialist. *Id.* Accordingly, the ALJ concluded that Mr. Hatzenbuhler is not disabled. R. 38.

## ANALYSIS

Mr. Hatzenbuhler contends that the ALJ erred by: (1) improperly weighing medical source opinions; and (2) improperly evaluating his credibility. The Court will address each argument in turn.

### A. <u>Evaluation of Medical Source Opinions</u>.

Mr. Hatzenbuhler first takes issue with the ALJ's treatment of the medical opinions of Drs. Lloyd Strode, Russell Linsky, and Michael Rutten—three doctors with whom Mr. Hatzenbuhler had long-term treatment relationships. ECF No. 12 at 11–20. These doctors opined that Mr. Hatzenbuhler would face significant challenges working full-time due to his back and mental health impairments. R. 446–449, 468, 485. However, the ALJ gave these doctors' opinions "minimal" or "little" weight. R. 33–34. Mr. Hatzenbuhler contends that the ALJ improperly discounted the opinions of these doctors, and that as a result, Mr.

Hatzenbuhler's RFC failed to accurately depict his capabilities leading to a flawed finding that he is not disabled. ECF No. 12 at 11–20.

A treating source's opinion is generally entitled to "controlling weight." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). However, an ALJ is given latitude to discount medical source opinions, even those of treating sources, if the ALJ sufficiently articulates "good reasons" for doing so and these reasons are supported by substantial evidence in the record. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). I find that the ALJ's decision in Mr. Hatzenbuhler's case was properly supported by substantial evidence. In diluting the weight of these medical source opinions, the ALJ specifically addressed each doctor's opinion and articulated his reasons for providing each opinion little deference. In addition, the ALJ also analyzed other evidence in the record that supported his decision. Thus, while it is true that another reviewer could have come to a different conclusion in reviewing the same evidence, it is not the job of this Court to "reweigh the evidence [or] substitute [its] judgment for that of the agency." *White v. Massanari*, 271 F.3d 1256, 1260 (10th Cir. 2001) (citations omitted). My sole role on appeal is to determine whether the ALJ's decision comports with the substantial evidence standard, and I find that it does. I will address the ALJ's handling of each doctor's opinion as well as the total body of evidence in turn.

1. **Dr. Strode.**

Dr. Strode treated Mr. Hatzenbuhler from 2010 until 2015 for back issues, often prescribing pain medications such as Percocet and injecting medication at the "trigger point" areas on Mr. Hatzenbuhler's spine. R. 348, 351, 487. In June 2014 Dr. Strode filled out a Disability Impairment Questionnaire regarding Mr. Hatzenbuhler's impairments in which he opined that during an eight-hour workday, Mr. Hatzenbuhler would be unable to sit for longer

5

than one hour and could only stand or walk for one hour total. R. 485. Dr. Strode also opined that Mr. Hatzenbuhler's pain, fatigue, or other symptoms would frequently interfere with attention and concentration, and that Mr. Hatzenbuhler would likely miss more than three days of work each month due to these impairments. R. 487.

The ALJ determined that Dr. Strode's opinion should be afforded "minimal weight even in consideration of Dr. Strode's standing as a treating source." R. 33. The ALJ supported his determination by noting the following: there is little evidence in the record that supports Dr. Strode's opinion regarding restrictions on Mr. Hatzenbuhler's use of his upper extremities; Dr. Strode's objective findings only indicated some back tenderness and spasms; Dr. Strode only provided "very conservative treatment of claimant's symptoms that would not support such restrictive limitations"; there was no finding that Mr. Hatzenbuhler has a significantly decreased range of motion; and the diagnostic imaging demonstrated that Mr. Hatzenbuhler's condition was stable and did not change from 2008 to 2013. R. 33. Further, the ALJ noted that Mr. Hatzenbuhler goes on long motorcycle trips—for example, riding his motorcycle 5,000 miles to Cabo San Lucas, Mexico, a month before the hearing before the ALJ in November 2015—and the ALJ opined that such activity "requires exertional and manipulative capacities well in excess of Dr. Strode's limitations." *Id.* As such, the ALJ determined that Dr. Strode's opinion that Mr. Hatzenbuhler would be subject to such great workplace limitations "borders on the absurd." *Id.*

Because the ALJ sufficiently articulated the reasons for his treatment of Dr. Strode's opinion and supported this treatment with evidence from the record, I reject Mr. Hatzenbuhler's argument that the ALJ's treatment of Dr. Strode's opinion was in error.

### 2. Dr. Linsky.

Cardiologist Dr. Linsky treated Mr. Hatzenbuhler for several years leading up to Mr. Hatzenbuhler's disability claim. R. 318. In an undated Cardiac Impairment Questionnaire that was completed sometime after July 1, 2014, Dr. Linsky opined that Mr. Hatzenbuhler would only be able to sit for two total hours per workday and that he would miss more than three days of work a month on average due to his impairments or treatment. R. 468. However, Dr. Linsky noted that these workplace limitations did not arise from Mr. Hatzenbuhler's cardiac issues. *Id.*

The ALJ determined that Dr. Linsky's opinion was entitled to "little weight" or even "very little weight." R. 33. In explaining this determination, the ALJ noted that Dr. Linsky's opinion was based upon impairments "generally outside the area of [Dr. Linsky's] expertise," namely impairments that have nothing to do with cardiology such as back and mental health issues. *Id.* Further, as with his analysis of Dr. Strode's opinion, the ALJ found significant incongruence between Dr. Linsky's restrictive opinion that Mr. Hatzenbuhler was unable to sit for longer than two hours per workday and Mr. Hatzenbuhler's reported activities of long-distance motorcycle riding, mowing the lawn, and performing other household tasks. *Id.*

Because the ALJ articulated the weight given to Dr. Linsky's opinion and his reasons for assigning said weight, including references to evidence in the record that supported his findings, I find that the ALJ did not err by assigning Dr. Linsky's opinion less-than-controlling weight.

### 3. Dr. Rutten.

Finally, the ALJ gave "minimal weight" to the opinion of Dr. Rutten, a physician at the VA medical center who treated Mr. Hatzenbuhler's PTSD and depressive disorder from 2008 through the time the disability claim was filed. R. 445. Dr. Rutten opined that based on Mr. Hatzenbuhler's physical and mental health issues, he would be unable to perform basic tasks in a

7

regular work setting, would be "unable to meet competitive standards," and would be absent from work more than four days a month. R. 34. Dr. Rutten further noted that Mr. Hatzenbuhler could only perform fine and gross manipulative activities at a twenty-five percent capacity, could use his arms to reach for only twenty-five percent of an eight-hour workday, and mentally has no useful ability to function in seventeen of twenty-five assessed areas. *Id.*

The ALJ gave minimal weight to Dr. Rutten's opinion because it is "wholly unsupported by the objective medical evidence." R. 34. The ALJ explained that the evidence does not "indicate any limitation of the upper extremities, nor does it support such restrictive lifting limitations, as the claimant has repeatedly reported to treatment providers that he is still capable of riding his motorcycle daily and for long distances, which requires both substantial strength as well as constant use of the bilateral upper extremities in far greater [excess] than 2 hours per day." *Id.* Further, the ALJ noted that with regard to Dr. Rutten's opinion of Mr. Hatzenbuhler's physical limitations, "the record is devoid of . . . objective findings by Dr. Rutten that would tend to support such an unreasonable statement of limitations." *Id.* The ALJ also found that Dr. Rutten's opinion regarding Mr. Hatzenbuhler's mental limitations was "baseless and had no support," and that "the record is devoid of any hospitalizations, any treatment records, of any kind" that would support Dr. Rutten's opinion that Mr. Hatzenbuhler has no useful ability to function in seventeen out of twenty-five assessed areas. *Id.* Finally, the ALJ noted that Mr. Hatzenbuhler's ability to "live alone, ride a motorcycle on a regular basis while obeying traffic laws, spend time with friends, tinker on engines, [and] avoid being hospitalized . . . all while receiving minimal mental health care from the VA or other providers further erodes even minimal support for [Dr. Rutten's] assessment." *Id.*

Again, as with the previous two physicians, I find that the ALJ sufficiently explained his treatment of Dr. Rutten's opinion and provided multiple reasons for his treatment using evidence in the record. As such, I find that the ALJ's treatment of Dr. Rutten's opinion was not in error.

**B. Credibility Determination.**

Mr. Hatzenbuhler also argues that the ALJ erred by improperly evaluating his credibility at the RFC determination phase. ECF No. 13 at 20–23. When assessing a claimant's subjective complaints of pain and other symptoms, an ALJ must consider the objective medical evidence that may corroborate the claimed symptoms, including: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment other than medication; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning his functional limitations. 20 C.F.R. § 404.1529(c)(3).

"When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996).[1] "When the ALJ finds the plaintiff incredible, he must make specific findings and state his reasons for disbelief." *Caldwell v. Sullivan*, 736 F. Supp. 1076, 1081 (D. Kan. 1990). Notably, as the Tenth Circuit has explained, credibility challenges are difficult to win:

> The ALJ enjoys an institutional advantage in making the type of determination at issue here. Not only does an ALJ see far more social security cases than do appellate judges, he or she is uniquely able to observe the demeanor and gauge the physical abilities of the claimant in a direct and unmediated fashion. As a result, the ALJ's credibility findings warrant particular deference.

---

[1] This ruling was overruled by SSR 16-3p on March 16, 2016. *See* 2016 WL 1119029 (March 16, 2016). However, since the ALJ's decision was issued in January 2016, SSR 96-7p governs the ALJ's decision.

9

*White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2001). Consequently, this Court "will not upset such determinations when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation marks omitted).

Here the ALJ determined that Mr. Hatzenbuhler's statements concerning the intensity, persistence, and limiting effects of his medically determinable impairments were not entirely credible. R. 31. Mr. Hatzenbuhler attacks the ALJ's credibility determination on four fronts. First, he claims that the ALJ's determination was not supported by substantial evidence. ECF No. 13 at 21. Second, Mr. Hatzenbuhler essentially argues that the ALJ erred by not entertaining the idea that his disabling conditions are what prompted his departure from his last job. *Id.* at 22. Third, Mr. Hatzenbuhler takes issue with the ALJ's inclusion of his marijuana use at the credibility determination phase. *Id.* Finally, Mr. Hatzenbuhler contends that the ALJ's reference to a treatment note concerning potentially exaggerated symptoms for "secondary gain" makes little sense as a matter of logic and that his work history is honorable and should entitle him to enhanced credibility—at least per the decisions of several out-of-circuit courts. *Id.* at 23.

Though Mr. Hatzenbuhler's second, third, and fourth arguments appear reasonable on their face, my concern on appeal is whether the ALJ's credibility determination was supported by substantial evidence. The other arguments ask the Court to reweigh the evidence and come to a different conclusion, which the Court may not do. *See Stokes v. Astrue*, 274 F. App'x 675, 686 (10th Cir. 2008) (unpublished) (the only question the court needs to consider with respect to an ALJ's credibility assessment is whether the assessment "was closely and affirmatively linked to evidence that a reasonable mind might accept as adequate to support that conclusion").

With that in mind, I find that the ALJ's credibility determination is adequately supported by the evidence and is therefore proper. The ALJ did more than simply pay lip service to the

factors outlined in 20 C.F.R. § 404.1529(c)(3). In explaining his credibility determination, the ALJ made clear how he used different sources of evidence to reach his conclusion. In particular, I note that the ALJ relied on multiple medical reports concerning Mr. Hatzenbuhler's physical and mental impairments; Mr. Hatzenbuhler's statements about his daily activities—specifically, his walking, weight lifting, and extensive motorcycle riding; Mr. Hatzenbuhler's lack of interest in pursuing additional mental health treatment; Mr. Hatzenbuhler's ability to continue working despite the onset of his allegedly disabling conditions; Mr. Hatzenbuhler's positive response to medication; and a handful of other factors such as the coincidence that Mr. Hatzenbuhler's paperwork indicates that his alleged disability began the day he was laid off from his most recent job. R. 28–32. As such, the ALJ's credibility determination is supported by substantial evidence and is therefore proper.

## ORDER

The Court thanks Mr. Hatzenbuhler for his service to this country and appreciates the sacrifices he has made. Nevertheless, after reviewing the record and the parties' briefs, I do not find that either of Mr. Hatzenbuhler's arguments on appeal warrant a reversal of the ALJ's decision in this case. Accordingly, for the reasons described above, the Court AFFIRMS the Commissioner's decision denying Mr. Hatzenbuhler's application for Disability Insurance Benefits.

DATED this 30th day of April, 2018.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge